***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and arguments of the parties. The Plaintiff has shown good grounds to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. An employment relationship existed on March 28, 2008.
3. The carrier for TB Construction, Inc. on the date of the alleged incident was Accident Fund Insurance Company of America.
4. Plaintiff's average weekly wage is $580.12, yielding a compensation rate of $386.77.
 *********** EXHIBITS
The parties stipulated the following documentary evidence:
 (a) Stipulated Exhibit 1: Pre-Trial Agreement
 (b) Stipulated Exhibit 2: Indexed Set of Paginated Exhibits
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 28 years old on the date of hearing before the Deputy Commissioner. Plaintiff has an eighth (8th) grade education. He entered the United States in June 1999, at the age of 17, and has primarily worked in the construction industry performing framing and sheetrock installation.
2. Plaintiff had been working for TB Construction for approximately three years as of March 28, 2008.
3. Plaintiff testified that he arrived for work the morning of March 28, 2008, at 7:00 a.m. and that he was uninjured at that time. *Page 3 
4. Plaintiff testified that he injured his back on March 28, 2008, at approximately 8:00 a.m. or 9:00 a.m. while moving materials. The bundle of the materials weighed twenty to twenty-five (20-25) pounds.
5. Javier Antonio Gutierrez, Plaintiff's co-worker and cousin, testified that Plaintiff arrived for work the morning of March 28, 2008, uninjured. Mr. Gutierrez testified further that he noticed something was wrong with Plaintiff during lunch that day.
6. Plaintiff's co-habitant, Ms. Livia Mayava del Toro Hermanez, testified that when Plaintiff left for work the morning of March 28, 2008, he was uninjured. She further testified that when Plaintiff returned from work that afternoon, he was complaining of back pain.
7. Plaintiff testified that he reported his back injury to his supervisor, Eddie Beacham, that same day, March 28, 2008, when Eddie questioned him about what was wrong with his back.
8. Plaintiff testified that he never had a work related injury prior to March 28, 2008, and that he had no idea what his rights were in that situation.
9. Plaintiff testified that on April 1, 2008, he spoke with Tommy Beacham, owner of TB Construction, before going to Presbyterian Hospital. Plaintiff testified that Tommy Beacham told Plaintiff that he was going to cover all the medical expenses and told Plaintiff to say that Plaintiff got hurt in work but not while working. Plaintiff believed Tommy Beacham would pay his bills.
10. Tommy Beacham testified that he never spoke with Plaintiff on April 1, 2008, that he never told Plaintiff to go to the doctor, that he never told Plaintiff to say his injury was not work related, and that Plaintiff told him, on April 2, 2008, that his injury was not work related.
11. Tommy Beacham, and his brother Eddie Beacham, both testified that Plaintiff did not inform them that he hurt his back while on the job. *Page 4 
12. Defendants allege that Plaintiff may have injured himself working for another employer on May 29 or May 30, 2008. Tommy Beacham testified and acknowledged that he had no specific knowledge of Plaintiff working for another company.
13. The allegations that Plaintiff may have injured himself working for another employer are not supported by any competent evidence of record and are therefore not credible. Furthermore, the Commission finds by the greater weight of the evidence, that the testimony provided by Tommy Beacham and Eddie Beacham is not credible and is therefore given little weight. The Commission finds Plaintiff credible and gives greater weight to his testimony.
14. The Commission finds by the greater weight of the credible evidence that Plaintiff notified his employer of his alleged work-related injury on March 28, 2008.
15. Defendants claim they were prejudiced by Plaintiff's waiting until December 3, 2008, to file a Form 18. However, Defendants had actual notice of Plaintiff's injury on the day it occurred, which is shown by the credible evidence of record. There is also no evidence that Defendants timely investigated Plaintiff's claim or that Defendants attempted to provide medical treatment once Plaintiff filed a Form 18. Therefore, Defendants had actual notice of Plaintiff's claim on the date of the incident. Defendants did not present any evidence that they were prejudiced by Plaintiff's failure to provide written notice within thirty (30) days.
16. Plaintiff first sought medical treatment on April 1, 2008, at Presbyterian Hospital. At this time, Plaintiff "denied any injury" to his back, however he complained that his back pain "started as mild pain and progressively got worse." The note from this initial treatment details Plaintiff's chief complaint as lower back pain since Friday. The report from Plaintiff's first treatment corroborates Plaintiff's alleged date of injury, Friday, March 28, 2008. Plaintiff was *Page 5 
diagnosed with acute back pain and lumbar strain. Plaintiff was prescribed Skelaxin and Tramadol.
17. Plaintiff sought treatment on April 4, 2008, from DeMaine Chiropractic Rehab Centers. Plaintiff was treated by Dr. Cleya Williams. The findings on Dr. Williams' exam of Plaintiff were consistent with a left sided herniation at L4-5.
18. Plaintiff reported to Dr. Williams that his back pain "was not caused by a work or automobile accident." In the new patient questionnaire, Plaintiff checked the "other" box with no explanation given rather than the "work related" box. Dr. Williams testified that Plaintiff did not report a lifting injury.
19. Dr. Williams opined that Plaintiff's injury had been recent.
20. Plaintiff returned to Presbyterian Hospital on April 17, 2008. Plaintiff gave a history of continued back pain, and Plaintiff's history shows "Patient notes the possibility of an injury. Mechanism of injury (Pt is employed as a framer). Patient also notes other injury." Plaintiff testified that he was trying to communicate to the Doctor that he had been injured at work.
21. Plaintiff was diagnosed with a lumbar sprain and given a prescription for Ibuprofen and Tramadol.
22. Plaintiff next treated at South Charlotte Pain Relief Center with Dr. Gustave Ferreri on November 18, 2008. Plaintiff reported to Dr. Ferreri that he had been injured at work and he thought his employer would be paying for the bill. At this time Plaintiff had pain radiating down to his left foot. Dr. Ferreri's findings were consistent with a herniation at L4-5.
23. Plaintiff stopped working for Defendant-Employer in November of 2008, sometime after his November 18, 2008, visit to Dr. Ferreri. Plaintiff has not been taken out of *Page 6 
work by any of his treating physicians. Plaintiff testified that he could no longer work because of his pain. As Plaintiff is unsure of the exact date in November that he stopped working, the Full Commission finds that Plaintiff last worked on November 30, 2008.
24. Plaintiff then treated through a no cost insurance plan, at the Cotswold Medical Center on March 10, 2009. Plaintiff saw Dr. Joseph Mueller who diagnosed Plaintiff with back pain and sciatica. Dr. Mueller prescribed a course of steroids and referred Plaintiff to an orthopedist.
25. Plaintiff saw Dr. Mueller again on April 14, 2009, and Dr. Mueller noted that Plaintiff had not yet been seen by an orthopedist. Dr. Mueller referred Plaintiff to OrthoCarolina where Plaintiff was seen on May 18, 2009. Dr. Mueller's findings on both March 10 and April 14, 2009, were consistent with a herniation at L4-5.
26. Plaintiff treated with Michael Long, PA-C, on May 18, 2009. Mr. Long ordered an MRI for further diagnosis of Plaintiff's pain complaints. The MRI was performed on May 26, 2009. Mr. Long recommended treating Plaintiff with steroids and Tramadol.
27. Plaintiff next saw Dr. Neal Taub on May 21, 2009, for a second opinion. Dr. Taub performed an examination of Plaintiff, and his diagnosis at that time was lumbar radicular syndrome status post work-related injury. Dr. Taub also recommended that an MRI be performed. Dr. Taub recommended a trial of physical therapy, referral to a spine specialist, and a twenty-five (25) pound lifting restriction. Plaintiff's May 26, 2009 MRI, confirmed a herniation at L4-5.
28. Dr. Taub testified that his findings on May 21, 2009, are consistent with the May 26, 2009 MRI findings of a herniation at L4-5. Dr. Taub recommended treatment of therapy and *Page 7 
a trial of epidural steroid injections. Dr. Taub believed that if therapy and the injections failed to alleviate Plaintiff's symptoms, Plaintiff may require surgical treatment.
29. Plaintiff returned to Michael Long, PA-C, on May 29, 2009. Mr. Long reviewed the MRI results and determined a treatment plan for Plaintiff. Plaintiff was to have a left L5 nerve root block, and Plaintiff was to follow up with a Dr. Darden to determine if Plaintiff was a surgical candidate. Dr. Taub's opinions and assessments were consistent with those of Michael Long, PA-C.
30. Dr. Taub opined that if Plaintiff were examined by him after the injury on March 28, 2008, and that Plaintiff was suffering from the same symptoms as he was at the time of his examination on May 21, 2009, he would have assigned Plaintiff a twenty-five (25) pound lifting restriction as of the date of injury, March 28, 2008.
31. On June 3, 2009, Plaintiff received an epidural steroid injection to the L5 spinal nerve by Dr. Ronald VanDerNoord. Plaintiff did not get any symptom relief from the injection. The injection was noted to be severely concordant, which meant that during the course of doing the injection Plaintiff's typical pain symptoms were recreated.
32. Plaintiff was examined by Dr. Alden Milam on July 8, 2009. Plaintiff diagnosed with a disc herniation on the left at L4-5 which was compressing his left L5 nerve. Dr. Milam opined to a reasonable degree of medical certainty that Plaintiff's symptoms correspond to the objective findings on the MRI.
33. Dr. Milam, based on the history presented by Plaintiff, felt that Plaintiff's mechanism of injury, lifting heavy materials, would be consistent with the cause for a disc herniation. *Page 8 
34. Dr. Milam ordered a CT scan to check for calcified disc herniation, which would be a sign of chronic disc herniation. CT results showed Plaintiff had a little bit of calcification that Dr. Milam interpreted to mean that Plaintiff's herniation was not "fresh." Those findings are more consistent with a herniation that would have developed on March 28, 2008, and would be less consistent with a herniation that developed on July 2, 2009.
35. Dr. Milam recommends that future treatment for Plaintiff would be surgical, that he undergo a microdiscectomy.
36. Dr. Milam agrees with, and finds reasonable, Dr. Taub's recommendation of a twenty-five (25) pound lifting restriction for Plaintiff. As of his July 2009 examination of Plaintiff, Dr. Milam would find light-duty restrictions for Plaintiff to be reasonable with a forty (40) pound lifting restriction. Dr. Milam opined that he would not have assigned lifting restrictions at the time of Plaintiff's injury, March 28, 2008, unless Plaintiff was having severe pain to the point where Plaintiff was unable to work. Dr. Milam opined that the forty (40) pound restriction would have been reasonable as of the date of the MRI, May 26, 2009.
37. The circumstances of Plaintiff's workplace incident of March 28, 2008, constituted a specific traumatic incident of the work assigned that arose out of and in the course of his employment with Defendant-Employer during a judicially cognizable time period.
38. Plaintiff is physically able to work, subject to at least a forty (40) pound lifting restriction. Plaintiff's only work experience is in construction, Plaintiff has an eighth (8th) grade education, and Plaintiff's first language is Spanish. Given the credible medical and vocational evidence of record, the Full Commission finds that Plaintiff is capable of some work but that it is futile to seek other employment because of Plaintiff's restrictions, inexperience, lack of education, and language barrier. *Page 9 
39. The credible medical and vocational evidence of record shows that, as a result of his March 28, 2008, injury, taking into account both his physical and vocational limitations, Plaintiff has been totally disabled and unable to earn any wages in any employment from November 30, 2008, and continuing.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony. It may accept or reject the testimony of a witness, in whole or part, depending solely upon whether it believes or disbelieves the same.See N.C. Gen. Stat. § 97-84; Smith v. William MuirheadConstr. Co., 27 N.C. App. 286, 291, 218 S.E.2d 717, 720 (1975). The Commission finds Plaintiff's version of the alleged March 28, 2008, incident is credible based upon the greater weight of the evidence. The Commission, based upon the greater weight of the evidence, finds witnesses Tommy Beacham and Eddie Beacham to not be credible and their testimony is given little or no weight.
2. In order to establish a compensable injury to the back, Plaintiff must prove that the disabling back injury arose out of and in the course of the employment and was the direct result of either an accident or a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6); Richards v. Town ofValdese, 92 N.C. App. 222, 224, 374 S.E.2d 116, 118 (1988),disc. review denied, 324 N.C. 337, 378 S.E.2d 799 (1989). Under the specific traumatic incident theory, Plaintiff is not required to prove that the injury arose from an unusual occurrence or departure *Page 10 
from ordinary duties. Fish v. Steelcase, Inc.,116 N.C. App. 703, 707, 449 S.E.2d 233, 237 (1994), cert.denied, 339 N.C. 737, 454 S.E.2d 650 (1995).
3. Furthermore, our courts have held that an injury is compensable if it is caused by an accident that arises out of employment, materially accelerates or aggravates a pre-existing condition, and proximately contributes to disability. N.C. Gen. Stat. § 97-2(6); Brown v. Family DollarDistrib. Ctr.,129 N.C. App. 361, 364, 499 S.E.2d 197, 199 (1998).
4. On March 28, 2008, as Plaintiff lifted a bundle of materials, he sustained a compensable injury to his back as a result of a specific traumatic incident of the work assigned that arose out of and in the course of his employment with Defendant-Employer during a judicially cognizable time period. N.C. Gen. Stat. § 97-2(6);Fish v. Steelcase, Inc.,116 N.C. App. 703, 707, 449 S.E.2d 233, 237 (1994), cert.denied, 339 N.C. 737, 454 S.E.2d 650 (1995). This compensable injury caused Plaintiff's back condition or materially accelerated or aggravated a pre-existing non-disabling back condition. N.C. Gen. Stat. § 97-2(6); Brown v. Family DollarDistrib. Ctr.,129 N.C. App. 361, 364, 499 S.E.2d 197, 199 (1998).
5. A Plaintiff can prove disability four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of pre-existing conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.Russell v. Lowe's Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993). In the present case the evidence shows that, given Plaintiff's current physical and *Page 11 
vocational limitations, Plaintiff is capable of some work but that it is futile to seek other employment because of Plaintiff's restrictions, inexperience, lack of education, and language barrier.
6. Given the credible medical and vocational evidence of record, and Plaintiff's compensable injury of March 28, 2008, Plaintiff was temporarily totally disabled and is entitled to temporary total disability compensation at the rate of $386.77 per week for the period from November 28, 2008, and continuing until Plaintiff returns to work or further order of the Commission. N.C. Gen. Stat. § 97-29; Russell v. Lowes Prod.Distribution, 108 N.C. App. 762 (1993).
7. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, Plaintiff is entitled to have Defendants provide all medical treatment, incurred or to be incurred, necessitated by the
March 28, 2008, compensable back injury when bills for the same have been approved pursuant to Industrial Commission Procedures. N.C. Gen. Stat. §§ 97-2(19); 97-25; 97-25.1.
8. Plaintiff is reasonably excused from failing to give written notice pursuant to N.C. Gen. Stat. § 97-22 in that he believed that Defendants were already aware of the incident and did not know of the necessity of providing a written report. Lawton v. DurhamCo., 85 N.C.App. 589, 355 S.E.2d 158 (1987).
9. Defendants had actual notice of Plaintiff's claim on the date of the incident and Defendants failed to meet their burden that they were prejudiced by Plaintiff's failure to provide written notice within thirty (30) days. N.C. Gen. Stat. § 97-22; Sanders v.Broyhill Furniture Industries,131 N.C.App. 383, 507 S.E.2d 568 (1998); Richardson v. MaximHealthcare/Allegis Group, 362 N.C. 657, 669 S.E.2d 582 (2008),reh'g denied, 363 N.C. 260, 676 S.E.2d 472 (2009);Gregory v. W.A. Brown Sons,363 N.C. 750, 688 S.E.2d 431 (2010). *Page 12 
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Given the credible medical and vocational evidence of record, and Plaintiff's compensable back injury, Defendants shall pay Plaintiff, subject to the attorney's fee approved below, temporary total disability compensation at a rate of $386.77 per week for the period from November 30, 2008, and continuing until Plaintiff returns to work or further order of the Commission.
2. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, Defendants shall pay all medical expenses incurred or to be incurred as a result of the compensable back injury sustained by Plaintiff on March 28, 2008, when bills for the same have been approved pursuant to Industrial Commission Procedures.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded to Plaintiff in paragraph one (1) above, is hereby approved to be deducted from the lump sums accrued and thereafter, every fourth (4th) payment due Plaintiff shall be paid directly to Plaintiff's attorney.
4. Defendants shall pay the costs.
This the 2nd day of September, 2010.
 S/___________________
 DANNY LEE McDONALD
 COMMISSIONER
CONCURRING:
S/_____________ STACI T. MEYER COMMISSIONER
S/_______________ PAMELA T. YOUNG CHAIR
 *Page 1