***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillips and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms with modifications the Opinion and Award of Deputy Commissioner Phillips and enters the following Opinion and Award:
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. All parties have been correctly designated, and there are no questions as to misjoinder or non-joinder of the parties.
2. An employer/employee relationship existed between the parties on the alleged date of incident March 6, 2009.
3. At the time of plaintiff's injury, his average weekly wage was $351.02.
4. The employer in this case is Bennett's Creek Wholesale Nursery, Inc.
5. Counsel for defendants stipulated in open court during the hearing before Deputy Commissioner Phillips, that defendant is a Virginia based corporation which has one satellite nursery located in Currituck County, North Carolina that regularly employed three persons thereby subjecting the corporation to Chapter 97 of the North Carolina General Statutes.
6. Counsel for defendant further stipulated that he was authorized by the Errors and Omissions ("E O") Carrier for defendant's Virginia worker's compensation agent to represent to this court and to the plaintiff, that said Carrier would pay the amounts deemed due to plaintiff under the provisions of Chapter 97 in the event this claim were deemed compensable up to the extent of coverage available under said agent's E O policy.
 ***********
The following were submitted to the Deputy Commissioner as:
 EXHIBITS
1. Submission of Stipulated Exhibits, including plaintiff's Ex. #1-4 that are true and accurate copies of the original documents given to Dr. Metcalf during the deposition and marked as Exhibits 1-4. *Page 3 
2. Stip. Ex. #1: IC Forms, Medical Records, Discovery, Notice of Need of Interpreter
3. Plaintiff's Ex. #1: Photo
4. Plaintiff's Ex. #2: Invoice Document
5. Defendant's Ex. #1: Spreadsheet for Commonwealth
6. Defendant's Ex. #2: Coverage for North Carolina form for Cincinnati Insurance Company/Declaration Page
7. Defendant's Ex. #3: Certificate of Coverage
8. Defendant's Ex. #4: Defendant's Agreement
9. State's Ex. #1: ESC Records
10. Depositions: Dr. Levy and Dr. Metcalf
 ***********
As set forth in the Pre-Trial Agreement and Deputy Commissioner Phillips' September 20, 2010 Opinion and Award, the Full Commission addresses the following:
 ISSUES
1. Whether an employment relationship existed between plaintiff and defendant under the North Carolina Workers' Compensation Act?
2. Whether plaintiff was injured in the course and scope of employment, and if so, to what benefits is plaintiff entitled?
3. Whether any penalties should be assessed for defendant's failure to provide workers' compensation insurance as required by the Act?
 *********** *Page 4 
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of hearing before the Deputy Commissioner, plaintiff was forty-nine (49) years old. Plaintiff was born in Mexico and has a sixth grade education in his native country. Plaintiff moved to the United States in 1985 and has only worked in the construction field.
2. Plaintiff began his employment with defendant-employer, Bennett's Creek Wholesale Nursery, Inc., in 2008. Defendant-employer had three employees working at its nursery in Currituck County, North Carolina, which included plaintiff, his supervisor, Mike Twiford, and a book keeper/secretary. Employment Security Commission records show that defendant-employer regularly employed at least three employees from the third quarter of 2008 through the fourth quarter of 2009.
3. On March 6, 2009, plaintiff and Mike Twiford were unloading a shipment of trees that had been delivered to the Currituck site on a large flat bed truck. There were a total of eighty-nine (89) trees delivered on that day. The trees were stacked in groups of seven, four on the bottom and three on the top. Each tree weighed between 200 and 500 pounds.
4. Plaintiff's job was to stand in the bed of the truck, lift up the trees from a horizontal to a vertical position, and hold them steady while Twiford used a mechanical device called a "tree boss" attached to a front end loader that grabbed the trees around the trunk. The "tree boss" would lift the tree off the truck and place it on the ground.
5. The delivery of such a large shipment of trees is a relatively rare event at the Currituck location and occurs only about twice a year. Unloading such a large shipment is a two person job. Only plaintiff and Twiford were available to do it on the day of delivery. *Page 5 
6. About half way through the process of unloading the truck, plaintiff testified that as he was lifting a tree, it began to roll as the trees beneath it shifted. Plaintiff had to shift his weight and twist in order to hold the tree steady. While doing so, he felt an immediate and sharp pain in his lower back. As soon as this occurred, plaintiff informed Mike Twiford that he had hurt his back. Twiford directed plaintiff to continue working. Plaintiff testified that he completed work that day and continued to work for the next two weeks but that his back pain became progressively worse.
7. Beginning March 20, 2009, plaintiff used his private health insurance to obtain treatment for back pain. Plaintiff informed Mike Twiford that he was seeking medical treatment for his back injury as he had to ask for permission each time he attended such an appointment. The medical records show that plaintiff attended sixteen (16) medical appointments related to his back pain between March 20, 2009, and December 2009. By December 2009, plaintiff was written out of work by his medical providers for back pain. Dr. Theodore W. Nicholas, M.D., wrote plaintiff out of work until further notice on December 11, 2009. Plaintiff underwent surgery in February 2010, and was in a back brace and unable to resume work at the time of the hearing before the Deputy Commissioner.
8. Twiford testified that he and plaintiff were unloading the truck in the manner described above, but denied that plaintiff told him about a back injury. Twiford contends that he did not find out about plaintiff's back injury until October 2010 when a translator from one of plaintiff's medical providers called and told him about it.
9. Dr. Metcalf recorded that plaintiff presented with a complaint of low back pain and radicular numbness on March 20, 2009, that was "recent", meaning within a period of weeks from *Page 6 
the onset of pain. On May 1, 2009, Dr. Metcalf noted that plaintiff's back pain was "probably work related" and had occurred two months prior, meaning around March 6, 2009.
10. Dr. Levy testified that while performing spinal surgery in the vicinity of plaintiff's L4-5 region, he found disc fragments that were "classic" for the acute onset of symptoms related to a back injury stemming from a lifting event in the manner that plaintiff described. Dr. Levy testified to a reasonable degree of medical certainty, and the Full Commission finds, that the incident as plaintiff described it, was the inciting event for plaintiff's subsequent treatment and surgery.
11. Dr. Levy has permanently restricted plaintiff to lifting restrictions of no greater than thirty (30) pounds. By the hearing date before the Deputy Commissioner, plaintiff remained out of work as a result of his injury by accident.
12. Dr. Metcalf testified that plaintiff reported that he was not experiencing any pain since his surgery in February 2010 and that plaintiff should be able to return to work, however, Dr. Metcalf testified that he would defer to the work restrictions set by the surgeon.
13. The Full Commission finds that defendant-employer had actual notice of plaintiff's claim on March 6, 2009, as Mike Twiford was informed of plaintiff's injury at the time of the injury.
14. The Full Commission finds that there was no prejudice to defendants stemming from the delay between the accident on March 6, 2009, and the filing of a Form 18 on November 15, 2009. The Full Commission finds that the incident took place on March 6, 2009, in the presence of plaintiff's immediate supervisor, that there was an immediate verbal report of the same, and that defendants were aware of the medical treatment occurring as plaintiff attended *Page 7 
over sixteen (16) appointments which were excused absences from work, during the intervening months.
15. The Full Commission further finds as fact that there has been no prejudice based on plaintiff's inaccurate reporting of the date of the accident as "on or about March 31, 2009" or "March 13, 2009" or "March 16, 2009" because the written documents provided to defendants prior to hearing were sufficient to indicate that it occurred while lifting a tree from a large delivery truck on or about March 6, 2009, in the presence of Mike Twiford, plaintiff's supervisor.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. All parties are properly before the Industrial Commission. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act. The Industrial Commission has jurisdiction over the parties and the subject matter of this claim. N.C. Gen. Stat. § 97-2.
2. On or about March 6, 2009, plaintiff sustained a compensable injury by accident to his lower back. N.C. Gen. Stat. § 97-2(6).
3. Bennett's Creek Wholesale Nursery, Inc., was the duly-qualified employer at the time of the accident and is subject to the North Carolina Workers' Compensation Act, having employed the requisite number of employees to be bound under the provisions of said Act at the time of the incident. N.C. Gen. Stat. § 97-2. *Page 8 
4. An employee-employer relationship existed between plaintiff and defendant-employer, Bennett's Creek Wholesale Nursery, Inc., at the time of plaintiff's injury and defendant-employer was insured as stipulated to by the parties. N.C. Gen. Stat. § 97-2.
5. Plaintiff's average weekly wage was $351.02 as stipulated to by the parties. Plaintiff's compensation rate is $234.03. N.C. Gen. Stat. §§ 97-2; 97-29.
6. As a result of plaintiff's compensable injury by accident, plaintiff is entitled to have the E O carrier pay to plaintiff temporary total disability payments in the amount of $234.03 per week from December 11, 2009, until plaintiff is able to return to suitable employment or further Order of the Commission. N.C. Gen. Stat. § 97-29.
7. Defendant-employer did not receive written notice of the March 6, 2009, incident until November 15, 2009, when plaintiff filed a Form 18. Plaintiff's failure to provide written notice to defendant-employer is reasonably excused. Plaintiff has demonstrated that defendant-employer was not prejudiced by the lack of written notice. Defendant-employer had actual notice of plaintiff's claim on the date of the incident, and defendant-employer failed to meet their burden that they were prejudiced by plaintiff's failure to provide written notice within thirty (30) days. N.C. Gen. Stat. § 97-22; Gregory v. W.A. Brown Sons,363 N.C. 750, 688 S.E.2d 431 (2010); Richardson v. MaximHealthcare/Allegis Group, 362 N.C. 657, 669 S.E.2d 582 (2008),reh'g denied, 363 N.C. 260, 676 S.E.2d 472 (2009);Sanders v. Broyhill Furniture Industries,131 N.C. App. 383, 507 S.E.2d 568 (1998).
8. As a result of plaintiff's compensable injury by accident, plaintiff is entitled to have the E O carrier pay all reasonable medical treatment related to plaintiff's back injury so long as such treatment tends to effectuate a cure, provide relief or lessen plaintiff's period of disability. Said treatment includes all treatment for plaintiff's back pain from the March 20, 2009 visit with *Page 9 
Dr. Vern Metcalf, the prescribed physical therapy related thereto, treatment and surgery as directed by Dr. Charles Levy, pain management with Atlantic Pain Management, and prescriptions and diagnostic tests ordered and prescribed as indicated in the medical records submitted to this court. N.C. Gen. Stat. § 97-25. Pursuant to N.C. Gen. Stat. § 97-25, plaintiff is entitled to have the E O carrier reimburse plaintiff's out-of-pocket expenses related to said medical treatment. Plaintiff is entitled to have the E O carrier reimburse plaintiff's private insurance carrier in the amount set forth by the Industrial Commission for such treatment.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Subject to the attorney's fee provided below, the Errors and Omissions carrier for defendant-employer's Virginia workers' compensation agent shall pay to plaintiff, temporary total disability compensation at the rate of $234.03 per week from December 11, 2009, until plaintiff returns to suitable employment or further order of the Commission. Those sums which have accrued shall be paid in a lump sum.
2. The Errors and Omissions carrier is directed to pay twenty-five percent (25%) of the lump sum for past due temporary total disability compensation in paragraph one (1) to plaintiff's attorney, and thereafter to pay every fourth (4th) check for ongoing temporary total disability compensation to plaintiff's attorney.
3. The Errors and Omissions carrier shall pay all ongoing medical treatment and costs related to plaintiff's compensable injury by accident as recommended by plaintiff's current treating physicians. Pursuant to N.C. Gen. Stat. § 97-25, the Errors and Omissions carrier shall reimburse *Page 10 
plaintiff's private health insurance carrier for all past treatment related to plaintiff's back injury that tends to effect a cure, provide relief and/or tends to lessen plaintiff's period of disability. Said payment shall include all treatment for plaintiffs back pain from the March 20, 2009 visit with Dr. Vern Metcalf, the prescribed physical therapy related thereto, treatment and surgery as directed by Dr. Charles Levy, pain management with Atlantic Pain Management, and prescriptions and diagnostic tests ordered and prescribed as indicated in the medical records from said physicians as submitted to this court and made part of the record herein.
4. The Errors and Omissions carrier shall likewise reimburse plaintiff for all out of pocket and deductible medical expenses incurred by him as described in paragraph 4 above and pay all related travel upon submission of an applicable Form 25T.
5. The Errors and Omissions carrier shall reimburse plaintiff for the cost of the court translator in the sum of $160.00.
6. Penalty Hearing 2503 is DISMISSED WITH PREJUDICE.
7. The Errors and Omissions carrier shall pay the costs.
This the 30th day of March, 2011.
 S/__________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/_____________ STACI T. MEYER COMMISSIONER
 S/________________ CHRISTOPHER SCOTT COMMISSIONER